UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>        v.<br><br>SOURIYANH PASOMSOUK,<br><br>                    Defendant. | CASE NO. CR18-5094 BHS<br><br>ORDER |

This matter comes before the Court on Defendant Souriyanh Pasomsouk's Motion for Compassionate Release, Dkt. 1080. The Court has considered the briefing filed in support of and in opposition to the motion and the remainder of the file and denies the motion for the reasons stated below.

## I.   BACKGROUND

On March 14, 2018, a grand jury returned an indictment charging twenty defendants—including Pasomsouk—with Conspiracy to Distribute Controlled Substances in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and (b)(1)(B). Dkt. 1. Pasomsouk was specifically charged with one count Conspiracy to Distribute Controlled Substances and one count Felon in Possession of a Firearm. Dkt. 239. On September 20, 2018,

Pasomsouk pled guilty to both counts. Dkt. 458. On January 15, 2019, Pasomsouk was sentenced to 96 months imprisonment followed by four years of supervised release. Dkt. 675. Pasomsouk is housed at the Victorville Federal Correctional Institute ("FCI Victorville") and is scheduled to be released on March 2, 2025. Dkt. 1081.

On September 28, 2020, Pasomsouk filed a pro se motion for compassionate release. Dkt. 940. Counsel was subsequently appointed, Dkt. 941, and the parties stipulated to allow counsel to file a supplemental brief, Dkt. 972. No supplemental briefing was filed. The Court denied Pasomsouk's previous Motion for Compassionate Release, Dkt. 940, without prejudice for failing to exhaust his administrative remedies. Dkt. 981.

On April 11, 2022, Pasomsouk again moved for compassionate release, arguing that his severe health conditions warrant his release. Dkt. 1080. Specifically, Pasomsouk argues that he is at high risk for COVID-19, he suffers from seizures, he believes he recently suffered a stroke, he has a history of blood clots and potential heart disease, he suffers lasting disabilities from being shot in the head, and he is suffering the effects of "long-COVID." *Id.* at 2–4. He also argues that he has been rehabilitated, that he has completed programming while incarcerated, and that he is at a low risk of recidivism. *Id.* at 3. The Government opposes his release,[1] arguing that Pasomsouk failed to exhaust his administrative remedies, that he has a serious criminal history, and that he has exaggerated his health concerns, many of which are caused by his own failure to take

---

[1] The Government's unopposed Motion for Leave to File Overlength Brief, Dkt. 1098, and its unopposed Motion to Seal, Dkt. 1100, are GRANTED.

1   prescribed medication. Dkt. 1099. Specifically, the Government avers that he is not

2   "suffering from the 'debilitating conditions' he complains of in his motion" and that the

3   record does not reflect that he "is unable to provide self-care." *Id.* at 8. Further, the

4   Government disputes Pasomsouk's COVID risk, positing that he was previously infected

5   with COVID-19 and has been vaccinated, including receiving his booster shot. *Id.*

6   ## II.   DISCUSSION

7           Pursuant to 18 U.S.C. § 3582(b), a judgment of conviction that includes a sentence

8   of imprisonment "constitutes a final judgment and may not be modified by a district court

9   except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010)

10  (internal quotations omitted). Effective December 21, 2018, the First Step Act of 2018

11  amended § 3582(c)(1)(A) by adding a provision that allows prisoners to directly petition

12  a district court for a reduction in sentence (also known as compassionate release):

13          (A) the court, upon motion of the Director of the Bureau of Prisons,
        or upon motion of the defendant after the defendant has fully exhausted all

14      administrative rights to appeal a failure of the Bureau of Prisons to bring a
        motion on the defendant's behalf or the lapse of 30 days from the receipt of

15      such a request by the warden of the defendant's facility, whichever is
        earlier, may reduce the term of imprisonment (and may impose a term of

16      probation or supervised release with or without conditions that does not
        exceed the unserved portion of the original term of imprisonment), after

17      considering the factors set forth in section 3553(a) to the extent that they
        are applicable, if it finds that—

18          (i) extraordinary and compelling reasons warrant such a reduction;
        ***

19          and that such a reduction is consistent with applicable policy
        statements issued by the Sentencing Commission; . . . .

20  18 U.S.C. § 3582(c)(1)(A). Accordingly, a court may reduce a sentence upon motion of a

21  defendant provided that: (1) the inmate has either exhausted his or her administrative

22

ORDER - 3

appeal rights of the Bureau of Prison's ("BOP") failure to bring such a motion on the inmate's behalf or has waited until 30 days after the applicable warden has received such a request; (2) the inmate has established "extraordinary and compelling reasons" for the requested sentence reduction; and (3) the reduction is consistent with the Sentencing Commission's policy statement. *See id*.

The Sentencing Commission's policy statement referenced in 18 U.S.C. § 3582(c)(1)(A) provides, in relevant part:

> [T]he court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
> (1)(A) Extraordinary and compelling reasons warrant the reduction;
> ***
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> (3) The reduction is consistent with this policy statement.

United States Sentencing Guidelines ("USSG") § 1B1.13. However, the Ninth Circuit has held that § 1B1.13 is inapplicable to defendant-initiated motions for compassionate release, joining many circuits across the country. *See United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) ("We agree with the persuasive decisions of our sister circuits and also hold that the current version of U.S.S.G. § 1B1.13 is not an 'applicable policy statement[]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant." (internal citation omitted)); *see also United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020); *United States v. Jones*, 980 F.3d 1098, 1109–10 (6th Cir. 2020). Rather, USSG § 1B1.13 is helpful guidance to the Court when exercising its discretion.

1    Therefore, on a defendant-initiated motion under the First Step Act, the defendant

2    must show that they have exhausted their administrative remedies and that they have

3    extraordinary and compelling reasons to warrant their release, and the Court must

4    consider the sentencing factors under 18 U.S.C. § 3553(a).

5    The Government argues that Pasomsouk failed to establish exhaustion, specifically

6    alleging that Pasomsouk did not provide evidence that he requested relief from the

7    warden. Dkt. 1099 at 9–10. The Government does not address Pasomsouk's Supplement

8    filed on May 12, 2022, which includes what appears to be four internal electronic

9    messages sent to the warden seeking compassionate release for Pasomsouk between April

10   4, 2022 and April 20, 2022. Dkt. 1102. Pasomsouk sent three of those messages himself

11   and the fourth was sent by another prisoner, Richard Wilford. *Id.* The Government did

12   not address whether these messages to the warden constitute exhaustion. For the purposes

13   of this motion, the Court concludes that Pasomsouk's electronic requests to the warden

14   are sufficient to satisfy the exhaustion requirement.

15   Nevertheless, Pasomsouk failed to establish extraordinary and compelling reasons

16   justifying his release. The Court considers a non-exhaustive list of factors other federal

17   courts have considered in determining whether a defendant has extraordinary and

18   compelling reasons for compassionate release in the context of COVID-19:

19   (i) whether the inmate is at higher risk because of his or her age and/or race,
     *see United States v. Young*, No. CR19-5055 BHS, 2020 WL 2614745, at *3

20   (W.D. Wash. May 22, 2020); (ii) whether the inmate has one or more,
     medically-documented, chronic health conditions that render him or her

21   more vulnerable to COVID-19, *see United States v. Locke*, No. CR18-0132
     RAJ, 2020 WL 3101016, at *4 (W.D. Wash. June 11, 2020) (observing that

22   the movant's health issues were "not merely self-diagnosed," but rather

"medically documented and verified"); *United States v. Rodriguez*, No. 2:03-cr-00271-AB-1, 2020 WL 1627331, at *7 (E.D. Pa. Apr. 1, 2020) (inmate with type 2 diabetes, obesity, hypertension, and liver abnormalities was in a "higher risk category"); (iii) the fatality rate for individuals with similar health conditions as compared with the overall fatality rate for COVID-19, *see id.* (summarizing COVID-19 fatality rates); *United States v. Pippin*, No. 16-0266, 2020 WL 2602140, at *1 (W.D. Wash. May 20, 2020) (granting a motion brought by a defendant suffering from pancytopenia, which is associated with an "over fivefold enhanced risk of severe COVID-19"); (iv) whether the inmate has previously tested positive for the coronavirus that causes COVID-19 and, if so, whether the inmate suffers from any long-term effects of the disease*, see United States v. Reynolds*, No. 2:18-cr-00131-RAJ, 2020 WL 3266532, at *3–4 (W.D. Wash. June 17, 2020) (denying a motion for compassionate release brought by an inmate who recovered from and was "not suffering from any reported lingering symptoms" related to COVID-19); and (v) whether the inmate's release is expected to reduce the risk of him or her contracting COVID-19, see *United States v. Sandoval*, No. CR14-5105RBL, 2020 WL 3077152, at *5 (W.D. Wash. June 10, 2020) (declining to release a defendant to a situation that "would likely place him at greater risk").

*United States v. Grubbs*, No. CR16-228 TSZ, 2020 WL 3839619, at *2 (W.D. Wash. July 8, 2020).

The Court also considers the inmate's vaccination status as the COVID-19 vaccination has proved to be effective at preventing serious illness, hospitalization, and death from the virus. While being fully vaccinated is not conclusive on a motion for compassionate release, it is consistent with this Court's precedent to find that absent a specific showing that the defendant themselves remains particularly susceptible to infection, vaccination cuts against a finding of extraordinary and compelling reasons. *See, e.g.*, *United States v. Ballenger*, No. CR16-5535 BHS, 2021 WL 308814, at *4 (W.D. Wash. Jan. 29, 2021).

The Court finds these factors useful, instructive, and consistent with the analysis of extraordinary and compelling reasons the Court has engaged in with COVID-19 cases. *See, e.g.*, *Young*, 2020 WL 2614745, at *3 (a 64-year-old African American defendant who suffers from hypertension and chronic kidney disease presented extraordinary and compelling reasons); *United States v. Lint*, No. CR18-5152 BHS, 2020 WL 4698815, at *2 (W.D. Wash. Aug. 13, 2020) (a defendant housed at a federal correctional institution that had only two inmates infected with COVID-19 did not present an extraordinary and compelling reason); *United States v. Gray*, No. CR16-5600 BHS, 2020 WL 5759792, at *2–3 (W.D. Wash. Sept. 28, 2020) (a relatively young female defendant with a Body Mass Index of 32.1, while obese, did not present sufficient evidence of extraordinary and compelling reasons without additional evidence of other risk factors). The Court has discretion to consider the factors provided in determining whether Pasomsouk has extraordinary and compelling reasons. *See Aruda*, 993 F.3d at 801 ("district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" (quoting *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020) (emphasis and alteration in original)).

Pasomsouk's risk of developing COVID-19 is not extraordinary or compelling. The CDC does not recognize seizure disorders as putting an individual at high risk for serious illness from COVID-19.[2] While it has been established that hypertension leaves

---

[2] Centers for Disease Control and Prevention, *People with Certain Medical Conditions* (last updated May 2, 2022), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

inmates at higher risk for COVID-19, the risk Pasomsouk will suffer severe illness if he is re-infected with COVID-19 is significantly mitigated by his three vaccinations. Moreover, Pasomsouk has obtained some natural immunity by having already contracted COVID-19.

Pasomsouk also failed to demonstrate that his medical conditions cannot be adequately addressed through the prison health care system. If the healthcare Pasomsouk has received is in fact inadequate, the remedy is not compassionate release but rather to pursue administrative remedies or to bring an Eighth Amendment claim in the district in which the prison is located.

## III.  ORDER

Therefore, it is hereby **ORDERED** that Defendant Souriyanh Pasomsouk's Motion for Compassionate Release, Dkt. 1080, is **DENIED**. The Government's unopposed Motion for Leave to File Overlength Brief, Dkt. 1098, and its unopposed Motion to Seal, Dkt. 1100, are **GRANTED**.

Dated this 6th day of July, 2022.

_____
BENJAMIN H. SETTLE
United States District Judge